Second Ward Savings Bank vs. City of Milwaukee and another.

SECOND WARD SAVINGS BANK, Appellant, vs. CITY OF MILWAUKEE and another, Respondents.

*November 28 — December 15, 1896.*

*Banks and banking: Taxation: Surplus: Exemptions: Double taxation: Diversity of person.*

1. Real estate forming a part of the surplus of a bank is not a part of its capital stock which is exempt from taxation under sec. 1, ch. 102, Laws of 1866.
2. The fact that the shares of stock of a bank have been assessed and taxed to the shareholders under sec. 1, ch. 102, Laws of 1866, at a valuation which includes not only the original capital of the bank but also its accumulated surplus, does not render a tax on real

94  587
95  362

94        587
60 LRA 368n

estate forming a part of such surplus a double tax, since the shares of stock are the property of the shareholders, while the title to the capital and property of the bank is vested in the bank itself.

3. In order to render taxation double one person or known subject of taxation must be required to contribute twice directly to the same burden, while other subjects of taxation are required to contribute but once.

APPEAL from an order of the circuit court for Milwaukee county: D. H. JOHNSON, Circuit Judge.    *Affirmed.*

This is an action to obtain a judgment declaring certain general taxes upon the real estate described in the complaint, the property of the plaintiff, to be illegal and void, and enjoining and restraining the city treasurer from selling such real estate, or any part thereof, and issuing any certificate or certificates of sale for the payment of such taxes for the year 1894, and for general relief.    It appears from the complaint that the plaintiff is a banking corporation organized under the state law, with a capital stock of $200,000, divided into 800 shares, of the face value of $250 each; that all of its stockholders are residents in and taxpayers of the city and county of Milwaukee; that it furnished in June, 1894, to the assessor of the assessment district in which the plaintiff bank had its principal place of business, a verified statement of the full and true value of the shares of stock owned by its stockholders, at $200,000, on the 1st day of May, 1894, stating the names, residence, and amount of holdings of its stockholders, etc.; that the assessor fixed the taxable value of the said shares at $450,000, instead of $200,000, as so reported, and assessed the said stock to said stockholders at that amount, which assessment was confirmed by the board of review of said city; that said assessor, in so fixing and assessing the value of the shares of stock as aforesaid, and the said board of review, so confirming such assessment, included and computed the entire surplus of said bank, in order to increase the taxable value of the said shares of stock.

It further appears that the surplus of the bank at the time of such assessment amounted to about the sum of $300,000, "a large proportion of which said surplus was then, and is now, composed of real estate owned and held by said plaintiff, and situate in the said city of Milwaukee, of all of which the said assessor and the said board of review of taxation were at all times informed and well knew;" that the real estate (describing it), except that portion in the Third ward of said city, and the west two thirds of lot numbered 4, and all of lot 5 in block 88 in the Sixth ward, was then, and still is, necessarily used in the operation of the business of said plaintiff bank, namely, as places of business for it and for its two branch banks; and that all of said real estate, including both that used for banking purposes and otherwise, "was purchased by said bank with money forming part of its capital stock; and that all of said real estate became, and now is, part of plaintiff's capital stock, and *is included in the said 800 shares into which said capital stock is divided;*" and that the said real estate was, in addition, assessed and taxed *eo nomine* to said plaintiff at its full taxable value, although it had already "been taxed at its full taxable value in the *assessment of the capital stock of said plaintiff bank to its said stockholders, as aforesaid;*" that all the shares of the capital stock had been taxed for the year 1894 to the holders thereof, at their said assessed value of $450,000, without deduction therefrom of the value of said real estate, or of any of the same or any part thereof; and that said stockholders had paid the tax thereon, amounting to $10,124.98, and the taxes assessed and extended on said real estate against said bank amounted to $3,348.09, and a tax warrant for that year had been placed in the hands of the defendant, the city treasurer, for collection, and was then due and payable. It was charged that the tax against said real estate was inequitable, unjust, and wholly illegal and void, for the reason that all of said real estate had " been

subjected to a double tax payable by the same parties, to wit, the stockholders of said plaintiff bank, as above shown, which is in violation of the established principle of taxation, that no one subject of taxation shall be subjected to more than one tax payable by the same person;" and it was alleged that the taxes upon said real estate were unequal, in that there were several banks in said city owning no real estate, and which were therefore obliged to pay but one tax upon their surplus, while this plaintiff was obliged to pay a tax upon its real estate, and its shareholders are "obliged to pay the same tax a second time upon said real estate included in their shares of stock as aforesaid." It was alleged that the defendant, the treasurer of the city, threatened to sell said real estate for said taxes, and relief was prayed as above stated, and for a temporary injunction during the pendency of the action. The defendants demurred to the complaint, on the ground that it did not state facts sufficient to constitute a cause of action. The court sustained the demurrer and vacated the injunctional order that had been granted as prayed, and from this order the plaintiff appealed.

For the appellant there was a brief by *Howard & Mallory,* and oral argument by *R. B. Mallory.* They contended, *inter alia,* that to tax a bank on its property and the stockholders on their shares is double taxation, and not allowable under the law. 1 Desty, Taxation, 199, and cases cited; *Gordon's Ex'rs v. Baltimore,* 5 Gill, 236; *State v. C. & P. R. Co.* 40 Md. 22; *Smith v. Burley,* 9 N. H. 423; *Nashua Sav. Bank v. Nashua,* 46 id. 389; 1 Cook, Stock, 568, note. It cannot be said in this case that the bank and the shareholders are two different and separate parties. The shareholders own all of the capital stock of the bank. There is no reserve stock. Therefore the shareholders are the bank to all intents and purposes. The bank is the trustee for the shareholders, and the trustee and the *cestuis que trust* cannot both be taxed on the same property. *Lewanee Co. Sav.*

*Bank v. Adrian,* 66 Mich. 273; *Burke v. Badlam,* 13. Cent. L. J. 48; *City Nat. Bank v. Paducah,* 5 id. 347.

For the respondents there was a brief by *C. H. Hamilton,* city attorney, and *Ernest Bruncken,* assistant city attorney, and oral argument by *Mr. Bruncken.* They argued, among other things, that the shares of stock of a bank and the property of the bank are not one and the same thing. The legal property of the shareholder is quite a different thing from that of the corporation, although the shares of stock have no value except that which they derive from the corporate property. 1 Cook, Stock, § 9; 2 Beach, Priv. Corp. § 466; *Van Allen v. Assessors,* 3 Wall. 583; *Gordon v. Appeal Tax Court,* 3 How. 133; *Oswego Starch Factory v. Dolloway,* 21 N. Y. 449; *People ex rel. Bank of Commonwealth v. Comm'rs of Taxes,* 23 id. 217; *Delaware R. R. Tax (Minot v. P., W. & B. R. Co.),* 18 Wall. 205; *Porter v. R., R. I. & St. L. R. Co.* 76 Ill. 561. If therefore the shares of stock in the hands of the shareholders and the corporate property are two different things, then to tax both cannot be double taxation, however much the value of the one may depend upon the value of the other. *A fortiori,* where the thing taxed in addition to the property is not the capital stock of the corporation itself, but the shares in the hands of the stockholders, that cannot be double taxation. *Lackawanna I. & C. Co. v. Luzerne Co.* 42 Pa. St. 424, 431; *Whitesell v. Northampton Co.* 49 id. 526, 529; *Toll-Bridge Co. v. Osborn,* 35 Conn. 7; *Farrington v. Tennessee,* 95 U. S. 679, 687; *Tennessee v. Whitworth,* 117 id. 129; *New Orleans v. Houston,* 119 id. 265; *State Bank v. Richmond,* 79 Va. 113; *Porter v. R., R. I. & St. L. R. Co.* 76 Ill. 561; *Salem Iron Factory Co. v. Danvers,* 10 Mass. 514.

PINNEY, J. The allegations of the complaint are to the effect that the real estate of the plaintiff, which in this case is the subject of the taxation complained of, is not a part of

the authorized amount at which its capital stock was fixed, and which it appears was full paid, when the corporation was organized. The capital stock was to be issued and sold in shares to subscribers, to obtain the means with which to carry on the business of banking. The capital stock of the bank, in this sense, could not be increased or diminished in amount except in the manner provided by law, although the value thereof might increase or be depreciated. It is expressly averred that "a large proportion of its surplus of $300,000, at the time of such taxation, was composed of the real estate" in question. It is true that the pleader states, as a conclusion rather than a fact, that such real estate was "purchased by said bank with money forming part of its capital stock," and that it "became and now is a part of the plaintiff's capital stock;" but this is immediately followed by the statement that "all of said real estate is included in the 800 shares into which said capital stock is divided." It is in this sense only that it is claimed that its real estate forms a part of the capital stock of the bank, and is included in the 800 shares into which the capital stock has been divided, for it is further alleged that such real estate had already been taxed at its full value in the assessment of the shares of the capital stock of said bank to its said stockholders.

1. It is contended that to tax the bank upon the value of this real estate is, under the circumstances, double taxation — First, in taxing the shares of its stockholders; and second, in taxing the real estate of the bank, the legal owner of it. Now, the tax on the shares of stock which are owned by the stockholders is not a tax on the capital or capital stock of the bank, nor is it a tax on the real estate of the bank. As was held in *Van Allen v. Assessors*, 3 Wall. 573, and confirmed in many subsequent cases: "The corporation is the legal owner of all the property of the bank, real and personal, and within the powers conferred upon it by the char-

ter, and for the purposes for which it was created, it can deal with the corporate property as absolutely as a private individual can deal with his own. . . . 'The individual members of the corporation are, no doubt, interested, in one sense, in the property of the corporation, as they may derive individual benefit from its increase, or loss from its decrease, but in no legal sense are the individual members the owners.' The interest of the shareholder entitles him to participate in the net profits earned by the bank in the employment of its capital during the existence of its charter, in proportion to the number of his shares, and, upon its dissolution and determination, to his proportion of the property of the corporation that may remain after the payment of its debts. This is a distinct, independent interest or property, held by the shareholder like any other property that may belong to him." *Palmer v. McMahon*, 133 U. S. 666; *Gibbons v. Mahon*, 136 U. S. 557; *Bank of Commerce v. Tennessee*, 161 U. S. 146. It is this interest or property which the state has made the subject of taxation against the stockholder. Laws of 1866, ch. 102, sec. 1 (S. & B. Ann. Stats. p. 1218). The statute declares that "no tax shall be assessed upon the capital of any bank or banking association, but the stockholders in such banks and banking associations shall be assessed and taxed *on the value of their shares of stock therein*, at the place where the bank or banking association is located, and not elsewhere." Bank stock is required to be entered upon the assessment roll in the names of the several owners of the shares thereof, respectively (S. & B. Ann. Stats. sec. 1044); and provision is made requiring a proper officer of the bank to deliver to the assessor a sworn statement of the names of its stockholders, the amount of stock held by each, and the full and true value of the stock on the 1st of May (S. & B. Ann. Stats. sec. 1051), in order that it may be assessed and valued by the assessor and board of review. By

the provisions of the general banking law (sec. 16, ch. 479, Laws of 1852), state banks had been required to pay to the state treasurer, on the 1st day of January and July in each year, a semiannual tax of three fourths of one per centum on the amount of the capital stock of such bank, and said capital stock was to be "exempt from all other taxes, except on that portion of said capital stock which shall consist of and include the real property of such bank or banking association;" and the real property of all banks or banking associations was to be assessed and taxed in the city, ward, village, or town where the same was located, for all state, county, town, and corporation purposes, in the name of the bank, but the owner or holder of shares of stock in any bank or banking association was not to be taxed as an individual for such shares of stock. This general provision of the banking law for taxing state banks upon their capital stock — that is to say, upon the fixed sum prescribed by the charter or articles of association — was held valid in *State ex rel. Harney v. Hastings*, 12 Wis. 596, and continued in force until after the organization of banks under the national banking act of 1864, when it was repealed; and subsequently the present enactment took its place, providing for the taxation of shares in state and national banks upon an equal basis.

The result of this legislation is that thereafter, instead of taxation at an arbitrary percentage upon the amount of the capital stock, or the amount paid in thereon, the law has provided for a tax upon the shares of stock of state and national banks alike upon their valuation, and has exempted all banks from a tax on their capital. The accumulated profits or surplus of a bank, over and above the amount of its capital stock paid in, are earnings derived from the use of such capital under the powers and franchises of the bank, and are liable to taxation like the property of any private

individual in so far as it consists of funds or property sub-
ject to, or not exempt from, taxation.  The tax here com-
plained of is in no proper legal sense a tax on the capital of
the bank, but on its surplus.  That such surplus is taxable
is a necessary result of the provision of the statute (S. & B.
Ann. Stats. sec. 1034), that "taxes shall be levied upon all
property in this state, except such as is exempted therefrom."
In the case of *State Bank v. Milwaukee*, 18 Wis. 281, it was
held that the accumulated profits of the bank, which had
never been divided among the stockholders, but had been
retained for banking purposes, are not a part of its capital
stock, in such a sense as to be exempt from the general rules
of taxation applicable to other taxable property.  The same
view is maintained in *Gibbons v. Mahon*, 136 U. S. 558;
*Shelby Co. v. Union & P. Bank*, 161 U. S. 149.

2.  The objection that the taxation complained of is double
taxation, and therefore illegal, cannot be sustained.  Double
taxation is defined as the "requirement that one person or
known subject of taxation shall directly contribute twice
to the same burden, while other subjects of taxation, be-
longing to the same class, are required to contribute but
once."  Cooley, Taxation (2d ed.), 225.  Here there is di-
versity of person, as well as of subject of taxation.  The
shares of stock are the legal property of the stockholders,
and, although the value of the stock is founded upon and
dependent upon the value of the property of the corpora-
tion, they are, nevertheless, a species of property altogether
separate and distinct in character and ownership from the
capital or property of the bank.  The shareholders, as such,
are not the owners of the capital or property of the bank,
the title to which is vested in the bank itself.  It cannot
therefore be said that the case presented is one of double
taxation, either as to person or subject.  *State Bank v. Mil-
waukee, supra; Van Allen v. Assessors*, 3 Wall. 573; *Porter*

*v. R., R. I. & St. L. R. Co.* 76 Ill. 561; *Bank of Commerce v. Tennessee,* 161 U. S. 146.

For these reasons, the court properly sustained the demurrer of the defendants, and vacated the temporary injunction.

*By the Court.*— The order of the circuit court is affirmed.