## AYCOCK & CLIFFORD v. HENRY BRAUN.

### (Case No. 5480)

1. ADMINISTRATOR— QUALIFICATIONS—CONTRACT TO MAKE BOND—ENFORCEMENT—A party desiring to be appointed administrator *de bonis non*, was unable to give the requisite bond. He contracted with a firm of lawyers to pay them a certain sum if they would secure his appointment and obtain for him sufficient bond. The heirs, having a superior right to the administration, had agreed to relinquish it in his favor. *Held :*

(1) Good character is an express addition to the applicant's qualifications. (R. S., art. 1861.) The test of this qualification is his ability to procure the requisite bond.

(2) The inability of the applicant to procure the surety rendered him incompetent, and the agreement, the tendency of which was to impose upon the trust a deficient incumbent, cannot be enforced. (Porter *v.* Jones, 52 Mo., 399.)

(3) If the tendency of the contract was vicious, the innocent intention of the parties could not save it. (Marshall *v.* Railway Company, 16 How., 314.)

(4) The attorneys could not enforce compensation for services rendered in furtherance of the scheme, and with the applicant's approval.

APPEAL from Bexar. Tried below before the Hon. Geo. H. Noonan.

Appellants, B. L. Aycock and C. H. Clifford, brought this suit November 22, 1884, against appellees, Edward Grenet, Henry Braun, G. H. Kalteyer, Jay Minter and Geo. Altgelt, and by first amended original petition, filed January 17, 1885, alleged that about October 1, 1884, there was pending in the county court of Bexar county administration on the estate of Honore Grenet, deceased ; that by the death of Joseph E. Dwyer, the executor, the estate was left without a legal representative; that its assets were $75,000, and liabilities $90,000; that a necessity existed for the appointment of an administrator to continue and close the administration, and defendant, Braun, was qualified for and entitled to the appointment; that Edward Grenet and Braun retained plaintiffs, who were then practicing attorneys in Bexar county, to represent Braun in securing his appointment as administrator, and to act as the regular counsel for him in the conduct of the administration in case of his appointment; and agreed to pay them reasonable compensaiton for their services .

That the bond of the administrator, when appointed, would have been $150,000; that Braun and Grenet were unable to obtain the necessary sureties on the bond, and appellants, by acting as counsel for the administrator, could have obtained for Braun, when appointed, a bond in said amount, with good and sufficient sureties thereon, as required by law, and such as would have been approved by the authorities required by law to approve the same; that Braun and Grenet, knowing these facts, agreed that if appellants would furnish such bond to Braun

in case of his appointment, they would pay them as special compensation for securing the same, $1,500.

That such of the heirs of Honore Grenet, deceased, as might have had a superior right to the administration, had agreed to relinquish such right in favor of Braun; that in pursuance of their employment, and at the special request of Braun and Grenet, appellants, on October 1, 1884, prepared written relinquishments of these rights, and obtained the signatures of some of the heirs thereto, and took the necessary steps to secure the signatures of the other heirs, and gave Braun and Grenet all proper and necessary legal advice, and entered fully upon their duties as retained counsel; that they filed application in the county court for letters of administration in favor of Braun, and did all that could be done in the premises. That the services actually rendered were reasonably worth $500.

That on or about November 1, 1884, Altgelt and Minter, attorneys at law, and Kalteyer, with full knowledge of the premises, wrongfully, maliciously and secretly conspired and agreed among themselves to induce Braun and Grenet to violate their contract with appellants.

That Braun and Grenet entered into this conspiracy, violated their contract with appellants, discharged them from their employment without any cause or default on their part, withdrew Braun's application, and consented that Kalteyer should make application for the administratorship.

That in furtherance of the conspiracy, Minter and Altgelt, as counsel for Grenet, Braun and Kalteyer, on November 5, 1882, secured from the county court of Bexar county, Kalteyer's appointment as administrator; that as a consideration for Braun's joining in the conspiracy, he received some character of employment under Kalteyer as administrator of the estate.

That appellants received no compensation for their services, that they were always ready and willing to, and capable of, performing their part of the contract, and were damaged $3,000 by its breach, for which they prayed judgment against all the defendants. In case of its refusal they prayed for judgment against Braun and Grenet for $500 and for general and equitable relief.

Defendants answered separately by :

1. General demurrers.

2. Special exceptions to the effect that the contracts between appellants and Braun and Grenet, set out in the petition, were contrary to public policy and void.

3. Special exceptions that there was in the petition a misjoinder of causes of action, in this, that appellants sued Braun and Grenet for

services rendered, and the other defendants for injury to their feelings.

4. General denial.

The court sustained the exceptions and demurrers, and dismissed the cause on January 17, 1885.

*Cocke, Denman & Franklin,* for appellants, cited: Chitty on Contr., (7th ed.) 597; Bishop on Contr., sec. 460; Anson on Contr., 175, 176; 3 Wait's Acts. and Def., 587; 7 Wait's Acts. and Def., 91, 93, 97, 99; Trist *v.* Child, 21 Wall., 441; Bartle *v.* Nutt, adm. of Coleman, 4 Pet., 184; see notes of same in Book 7, U. S. S. C. R., by Lawyers Co-operative Pub. Co.

*Wm. Aubrey,* for appellees, cited: Arrington *v.* Sneed, 18 Tex., 135; Tool Co. *v.* Norris, 2 Wall., 45; Trist *v.* Child, 21 Wall., 441; Rose *v.* Truax, 21 Barb., 361; R. S., arts, 1861, 2192; Harris *v.* Roof's exrs., 10 Barb., 489; Fuller *v.* Dame, 18 Pick., 472; Caton *v.* Stewart, 76 N. C., 357; Pol. Prin. of Countrs., 286; Haas *v.* Fenlon, 8 Kan., 601; Guernsey *v.* Cook, 120 Mass., 501; Gray *v.* Hook, 4 N. Y., 449; Noel *v.* Drake, 28 Kan., 265.

ROBERTSON, ASSOCIATE JUSTICE.—To protect the interests of the creditors and distributees of an estate of a deceased person, the administrator is bound to the faithful discharge of his duties by a solemn oath, as well as by a solvent bond. R. S., arts. 1886, 1889. The appointment may be granted to none not qualified to act, and when one, not entitled by relationship to the deceased or interest in the estate, applies, good character is an express addition to the qualifications. Art. 1861. This qualification is passed upon by the court, but its final ordeal is in the test of the applicant's ability to procure the requisite surety. He is not a fit person to administer the sacred trust unless he can give the bond. The petition alleged that Braun lacked this qualification. He could not obtain, on the simple merits of his character for honesty and business efficiency, the certification of competent sureties. A contract to remove this impediment without curing the defect, and to secure him the office in spite of his disqualification, is a contract to evade the law, to escape a safeguard which the law has established against maladministration, and protects by forbidding the citizen from becoming interested in its avoidance or destruction. The courts will never enforce an agreement, the tendency of which is to impose upon this trust an unsuitable incumbent. Porter *v.* Jones, 52 Mo., 399.

Many honest and capable men may not be able to make $150,000 bonds, but such as cannot are not entitled to administer upon estates

worth $75,000.   Braun could not acquire this qualification by leasing the plaintiff's ability to make the bond.   Such a contract would tempt the administrator to reimburse his extraordinary outlay by unnecessary or illegitimate charges against the estate, opportunities for which have not been utterly prevented by stringent legislation and the utmost vigilance of the courts; while plaintiffs' zeal in securing the approval of their client's bond would be stimulated by a reward, additional to compensation for their professional services, contingent upon success. There is nothing whatever in this record that indicates any purpose on the part of Braun or the plaintiffs to do any thing wrong or improper.   On the contrary, the parties are to be-credited, as they consistently may, with honest and honorable motives in all done or contemplated.   But the execution of the contract made in accordance with the stipulations averred, puts in operation an influence calculated to corrupt good men, and which would induce the evil-disposed to tamper with the course of justice.   The contract must be tried by its immediate tendency, and if that is vicious, the innocent intentions of the parties cannot save it.  Marshall v. Railway Company, 16 How., 314.

One of the immediate objects of this contract was to have an unsuitable person appointed administrator of an estate.   Pollack's Principles of Contracts, 342.   The services actually rendered by the plaintiffs, before Braun abandoned his scheme, were in furtherance of that part of the contract which the policy of the law forbids the courts to enforce.   The demurrer to the petition was rightly sustained, and the judgment of dismissal is affirmed.

                                                    AFFIRMED.

[Opinion delivered May 7, 1886.]