JARVIS v. DREW.   (No. 9120.)

(Court of Civil Appeals of Texas. Ft. Worth. June 14, 1919.   On Motion for Rehearing, Oct. 18, 1919.)

1. EXECUTORS AND ADMINISTRATORS ☞109(5) —EXPENDITURE FOR FIDELITY BOND; MISTAKE OF LAW.

The fact that an administratrix or her attorneys were induced to believe, from the language of a county judge, that he would allow as expenses premiums paid by the administratrix on a fidelity bond, did not authorize or legalize such a charge, as the law, once determined, must be followed, although the court may have theretofore labored under an erroneous impression as to what the law was.

2. EXECUTORS AND ADMINISTRATORS ☞401 — SALE OF LAND; BROKER'S COMMISSION.

An estate may properly be charged with the commission of a broker employed by an administrator, where the employment was reasonably necessary to sell land.

3. EXECUTORS AND ADMINISTRATORS ☞111(1) —EXPENDITURES FOR ATTORNEY'S FEES.

An administrator may properly be allowed remuneration for reasonable attorney's fees paid, where the legal services were given on behalf and for the benefit of the estate.

4. EXECUTORS AND ADMINISTRATORS ☞109(5) —EXPENDITURE FOR PREMIUMS ON FIDELITY BOND.

In the absence of some statutory authority, a premium paid for the making of an administrator's bond is not a proper charge against the estate, but should be borne by the administrator.

5. EXECUTORS AND ADMINISTRATORS ☞109(5) —EXPENDITURE FOR PREMIUM ON FIDELITY BOND.

Vernon's Sayles' Ann. Civ. St. 1914, arts. 3309, 3621, 3622, 3623, 3235, 4099, 4101, 5493, do not authorize administrator to charge against the estate a premium paid for the making of his bond.

Appeal from District Court, Tarrant County; Bruce Young, Judge.

In the matter of the estate of Mrs. Willie Mae Jackson, deceased.   From a judgment allowing a claim filed by Mrs. S. M. Drew, as administratrix of the estate, Van Zandt Jarvis, guardian of two minor heirs, appeals. Reversed and rendered.

See, also, 216 S. W. 618.

Flournoy, Smith & Storer, of Ft. Worth, for appellant.

John W. Estes, M. B. Simpson, and Ocie Speer, all of Ft. Worth, for appellee.

BUCK, J.   The one question in this appeal is whether the premium on the fidelity bond of the administratrix is a proper charge against the estate.   Mrs. S. M. Drew, the duly qualified administratrix of the estate of Mrs. Willie Mae Jackson,   under   a   bond   of $1,500,000, presented to the county court of Tarrant county, sitting in probate, a claim for $3,000, alleged to be the premiums paid to the fidelity company for making her bond as administratrix during the two years of her administration.   The fact that said premiums paid were the usual and ordinary premiums charged is not questioned.   The county court rejected this claim, and on an appeal to the district court it was allowed.   Hence this appeal by Van Zandt Jarvis, guardian of the two minor heirs.

[1] The evidence shows that for many years prior to the incumbency of the county judge before whom this case was originally tried it had been the custom, in the probate court of Tarrant county, to allow such fees as legitimate charges against the estate, but that upon entering office the said judge declined to allow such claims.   There is some evidence to the effect that before the administratrix made her bond for the first year her attorneys were informed by the county judge that he would require, or at least preferred, a bond secured by a fidelity company rather than one signed by personal sureties, and that language was used by the judge of reasonable import that he would allow the claim for the premiums as a charge against the estate if it did not exceed $1,500 a year.   The county judge denied that he used language, or at least intended to use language, to the administratrix or to her attorneys, which could reasonably be interpreted as a promise or agreement to allow such insurance premiums. But we are of the opinion that the controversy over this question of fact need not be further considered.   If the claim is not legally chargeable to the estate, the fact that the administratrix or her attorneys may have been induced to believe from the language of the judge that he would allow the same would not authorize or legalize such a charge. The law, once determined, must be followed, though an officer of the law, judge, or court may have theretofore labored under an erroneous impression as to what the law was.

So far as we have been able to determine, this question has not been directly decided by the Supreme Court or other appellate tri-

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

bunal in Texas. Article 3309, Vernon's Sayles' Civil Statutes, provides that before the issuance of letters testamentary or of administration the person to whom such letters are granted must enter into bond with at least two good and sufficient sureties, and, further, that such bond may be made by any corporation premitted to do business in this state organized for the purpose of issuing surety, guaranty, or indemnity bonds, etc. Article 5493, Id., provides:

"The rights, powers, and duties of executors and administrators shall be governed by the common law, when not otherwise provided by statute."

Articles 3621–3622 provide for commissions to executors and administrators.

Article 3623 provides that:

"Executors and administrators shall also be allowed all reasonable expenses necessarily incurred by them in the preservation, safe keeping and management of the estate, and all reasonable attorney's fees that may be necessarily incurred by them in the course of the administration."

It appears that it is under the last-cited article, if at all, that statutory authority must be found for charging the estate with the item mentioned.

In Croswell's Executors and Administrators (1897) p. 321, it is said:

"The executor or administrator is also allowed the reasonable expenses necessarily incurred in the proper execution of his trust, of whatever nature they may be. The propriety of the expenses is always a matter to be decided by the probate court; and if the expenses appear to have been incurred in good faith, and in managing the estate in a proper way, they will be allowed. Thus, where the executor claimed an allowance for brokerage commissions paid to one who negotiated a sale of real estate belonging to the estate, the charge was allowed. So, traveling expenses, when they are actually incurred by the executor or administrator in the duties necessarily incident to the settlement of the estate, are to be allowed in his accounts."

[2, 3] That an estate may properly be charged with the commission of a broker whose employment is reasonably necessary to sell land is generally conceded. Armstrong v. O'Brien, 83 Tex. 635, 19 S. W. 268; O'Brien v. Gilleland, 79 Tex. 602, 15 S. W. 681; McCown v. Terrell, 9 Tex. Civ. App. 66, 29 S. W. 484; In re Estate of Willard, 139 Cal. 501, 73 Pac. 240, 64 L. R. A. 554, and notes thereunder. That an administrator may properly be allowed remuneration for reasonable attorney's fees paid, where the legal services were given on behalf and for the benefit of the estate, is also well established. 11 R. C. L. pp. 234, 235; 2 Schouler on Wills, Executors, and Administrators (5th Ed.) § 1544, p. 1671; Simkins, Administration of Estates in Texas (2d Ed.) pp. 446, 447, and

authorities cited; 18 Cyc. p. 275 et seq. Also the cost of making replevin and other bonds necessary to enforce or protect the rights of the estate are held to be proper charges against the estate. Davis v. Blumenberg, 107 Miss. 432, 65 South. 503; Re Clark, 195 Pa. 520, 46 Atl. 127, 48 L. R. A. 587; Bick v. Reese, 52 Hun, 125, 5 N. Y. Supp. 121. But the trend of decisions seems to be, in the absence of statutory authority, that an executor or administrator is not entitled to recover against the estate the expense of making his qualifying bond. In 18 Cyc. p. 285, it is said:

"The amount paid by the personal representative to a guaranty or indemnity company or to individual bondsmen, in order to procure sureties on his personal bond, is not, in the absence of some statute so providing, chargeable against the estate, in addition to his usual recompense, and an allowance of the amount expended in procuring a revenue stamp for the bond has also been rejected."

See, also, Jenkins v. Shaffer, 19 N. Y. St. Rep. 900, 6 Dem. Sur. 59; In re Eby, 164 Pa. 249, 30 Atl. 124; Pickering's Estate, 4 Pa. Dist. R. 263; Miller's Estate, 13 Pa. Co. Ct. R. 137; Wilson's Estate, 1 Pa. Co. Ct. R. 509; Rabasse's Succession, 51 La. Ann. 590, 25 South. 326; Kernan's Succession, 105 La. 592, 30 South. 239 (but an act of Louisiana Legislature of 1900 [Acts 1900, p. 127] allows such a payment to be charged against the expenses of the administration); Adamson v. Parker, 74 Ark. 168, 85 S. W. 239. To the same effect are the authorities, in the main the ones above cited under the quotation from Cyc., collated in 22 Am. Digest (Cent. Ed.) vol. 22, p. 654, § 444. To the contrary may be cited In re Atkinson's Estate, 85 N. J. Eq. 485, 96 Atl. 89; In re Wilson's Estate, 97 Neb. 780, 151 N. W. 316; Edelen v. Edelen, 11 Md. 415; Hamacker v. Bank, 95 Wis. 359, 70 N. W. 295. In the last-named case it was a receiver, and not an administrator, who was held entitled to recover the premium paid on his bond.

In the case of Aycock et al. v. Braun, 66 Tex. 201, 18 S. W. 500, the plaintiffs brought a suit against Braun and others, alleging that Braun was desirous of being appointed administrator of a certain estate, and was qualified for and entitled to the appointment, but was unable to secure the necessary sureties on his bond as such administrator, and that he entered into a contract with plaintiffs to represent him in securing his appointment as administrator and to act as counsel for him in the conduct of the administration in case of his appointment, and agreed to pay them reasonable compensation for their services; that the bond of the administrator, when appointed, would have been $150,000, and that Braun and one of the other defendants named were unable to secure the necessary sureties, and agreed with plaintiffs that, if they would secure the necessary signatures to the bond and perform certain other legal

services, that they would pay the plaintiffs a reasonable compensation for said services. The Supreme Court in discussing the question involved said:

"To protect the interests of the creditors and distributees of an estate of a deceased person, the administrator is bound to the faithful discharge of his duties by a solemn oath, as well as by a solvent bond. R. S. arts. 1886, 1889. The appointment may be granted to none not qualified to act, and when one not entitled by relationship to the deceased or interest in the estate applies, good character is an express addition to the qualifications. Article 1861. This qualification is passed upon by the court, but its final ordeal is in the test of the applicant's ability to procure the requisite surety. He is not a fit person to administer the sacred trust unless he can give the bond. The petition alleged that Braun lacked this qualification. He could not obtain, on the simple merits of his character for honesty and business efficiency, the certification of competent sureties. A contract to remove this impediment without curing the defect, and to secure him the office in spite of his disqualification, is a contract to evade the law, to escape a safeguard which the law has established against maladministration, and protects by forbidding the citizen from becoming interested in its avoidance or destruction. The courts will never enforce an agreement the tendency of which is to impose upon this trust an unsuitable incumbent. * * *

"Braun could not acquire this qualification by leasing the plaintiff's ability to make the bond. Such a contract would tempt the administrator to reimburse his extraordinary outlay by unnecessary or illegitimate charges against the estate."

The Supreme Court held that the demurrer to the petition was rightly sustained, and the judgment of dismissal was affirmed. While this case is not directly in point, it indicates very strongly that the Supreme Court at the time this decision was rendered accepted without question the proposition that the administrator was not entitled under the Texas law, statutory or otherwise, to charge to the estate even the reasonable expense incurred in making the qualifying bond.

[4, 5] Appellee urges that the cases cited from the Pennsylvania, Arkansas, and Louisiana courts are not controlling, or even persuasive, because in Louisiana the civil law, in the absence of statutory provision, prevails, while in Texas the common law is in force; and that the other two states mentioned have statutes limiting the compensation to certain specified commissions for all services rendered and risks incurred by the administrator in the administration of an estate. We think it will be found, upon examination of the authorities of various states whose courts have held that this character of expense was properly chargeable to the estate as a part of the costs of administration, that the decision to that effect rested upon an expressed or implied statutory provision; and that the rule is as laid down in 18 Cyc., supra,

that, in the absence of such statutory provision, the insurance premium on the guaranty or indemnity bond, or any sum paid to an individual bondsman, is not a proper charge against the estate. While article 3235, Vernon's Sayles' Civil Statutes, provides: " * * * Upon the issuance of letters testamentary or of administration upon any such estate, the executor or administrator shall have the right to the possession of the estate as it existed at the death of the testator or intestate;" yet we do not feel that this article authorizes the character of expense here involved to be charged against the estate. We do not think any aid in the solution of this question may be received from article 4101, Vernon's Sayles' Texas Civil Statutes, regulating the giving of bond by the guardian of an estate, which provides that the premium on such bond shall be paid by the guardian and not out of the estate of the ward. It is argued by appellant that this provision of the statute, as amended by the Acts of 1897, p. 52, is indicative of the legislative intent that the premium on the administrator's bond shall not be paid out of the estate. But appellee with equal insistence urges that the provision as to the guardian's bond indicates that the Legislature recognized the right of the administrator to be reimbursed for such premium because the bond of the administrator (article 3309), is required to be in double the amount of the appraised value of the estate, while the bond of the guardian (article 4099) shall be in amount equal to double the estimated value of the personal property belonging to such estate, and in such other amount as the county judge may require; that since the Legislature reduced the amount of the bond required of a guardian, it provided that any premium paid should be paid by the guardian himself; that no reduction of the bond of the administrator or executor having been authorized, the legislative intent is to be inferred, at least, that such premium should not be required of the administrator or executor. But we do not feel that either inference suggested should control in this matter, but we do conclude that in the absence of some statutory authority—and there appears to be none—that the premium paid for the making of an administrator's bond is not a proper charge against the estate, but should be borne by the administrator or administratrix. Hence the judgment of the trial court is reversed, and judgment here rendered that plaintiff below take nothing by reason of this suit, and that costs be adjudged against appellee.

### On Motion for Rehearing.

The case of Rowe v. Dyess (Tex. Com. App.) 213 S. W. 234, recently decided by Section B, Commission of Appeals, and cited by appellee as sustaining her contention, has no bearing upon the question here involved. In the cited case it was held that an administrator was

not entitled to allowance for attorney's fees incurred in the prosecution of his personal claim against the estate, nor in his contest for appointment as administrator, but that he was entitled to reasonable attorney's fees in good faith incurred in resisting an attempt to withdraw the estate from administration. Nothing said in our original opinion is in conflict with the holding in the Rowe v. Dyess Case nor do we see that the latter case has any controlling effect upon the questions here involved.

Motion for rehearing is overruled.